Case number 161722 Nancy Roschival versus Hurley Medical Center et al. Oral argument not to exceed 15 minutes per side. Mr. Michael Freifel for the appellant. Good afternoon, your honors. I'd like to reserve five minutes for rebuttal. Fine. Thank you. Your honors, as you know, this is a race discrimination case in a RIF context, reduction in force context. I basically think that there are three pieces of evidence that support that this case should have gone to a jury as opposed to being summary judgment fodder. First piece of evidence that we have that should have warranted allowing this case going to a jury is the fact that the layoff procedure that is outlined in the employee handbook for Hurley Medical Center for non-bargaining unit employees was not adequately followed. Now, by admission, when you read that procedure, you'll notice there are several ambiguous and vague terms in there. It's pretty complicated. So what I did was I got two witnesses, two former assistant directors of human resources, Ms. Rebecca Jackson and Ms. Liz Foster, to explain it to me and to memorialize how that procedure was supposed to be used in affidavits. Also, not only did I have them explain to me exactly how the procedure was done, I put it in context of how Mrs. Roschival's layoff was conducted. Based upon what Ms. Jackson and Ms. Foster told me, it is apparent that the layoff procedure was not followed correctly. In fact, it was completely deviated from Mr. Dozier, who is the African American who was retained, and Ms. Roschival were in the same classification according to Ms. Jackson and Ms. Foster. Now, defendants in this case have disputed that and disputed it vigorously, but the fact of the matter remains is that there is a fact dispute as to whether or not this procedure was properly followed or not. Ms. Jackson and Ms. Foster determined that not only were they in the same classification, but because it was in a series, human resource coordinator zero and human resource coordinator one, that the person with the less seniority in the series was to be eliminated. That person was Mr. Dozier. That is not a matter of dispute. Mr. Dozier had less seniority. He should have been the one who was laid off. Due to the fact that he was not laid off. Why is it fair to say that it's a tribal issue of fact for a jury as to race discrimination that there's a tribal issue of fact over a very complicated layoff procedure? I mean, let's, for the sake of argument, call that a 51-49 question, what the right way to apply that procedure is in a RIF. Let's just say for the sake of argument that's true. And so in one sense, I grant you, wow, yeah, that's really hard to figure out. Sounds like a jury question, but I guess even if I accept that, I'm not sure why that has anything to do with race discrimination. In fact, the harder the issue is, the less likely it has anything to do with race discrimination. That's why I was emphasizing how complicated it is. The more complicated, the more one's inclined to say it's a matter of law. That just doesn't tell you anything about race discrimination. True. I mean, it's complicated to you and I as people from the outside reading it, but it's apparent from talking to the witnesses. It didn't seem very complicated to them. And Ms. Roerichs, who was the individual. The evidence shows that it was easy for everybody to follow and there was only one way to look at it? Well, it was easy for Ms. Foster and Ms. Jackson to follow it the way they did. I mean, it wasn't very complicated to them. And they were utilizing past employment practices, how they've done layoffs in the past, in the way that they interpreted this. What do you do about the fact that Gavilek, am I saying it right, Gavilek? Gavilek. Gavilek, who's the defendant. Correct. This wasn't her regular job and she asked Roerich, you know, is this the right way to do it? Who gets laid off? I suspected you were going to ask that. The two pieces of evidence that really point to Ms. Gavilek as having potential racial animus in this case, which obviously is the ultimate question in all these cases, is the following. Obviously, Ms. Gavilek expressed to Ms. Roerichs, go ahead and figure out who's supposed to. But I'm concerned that Jamal is one of those individuals who might potentially be laid off. Gavilek knew that the two people who were going to be the focus of this layoff were Nancy Rochivelle and Jamal Dozier. And she, although Ms. Roerichs in her deposition did say that Ms. Gavilek was concerned that both of them might are affected, she did indicate in her testimony, Ms. Roerichs indicated in her testimony in her deposition, that Gavilek did express a concern that Jamal was the focus of the layoff and could potentially lose his job. But in context, that exchange, I mean, the district court judge is very careful about that. I mean, it again is not clear, but she says she didn't want anyone laid off. Next question, what about him? But you could fairly say, as the district court judge did, that any person could have been inserted into that next question because of what was just said in the answer before. Granted, but because all reasonable inferences are to be construed in light of the non-moving party, I would argue that that particular statement from Ms. Roerichs could be reasonably interpreted to mean that Ms. Gavilek was genuinely concerned that Mr. Dozier was going to lose his job as a result of this layoff, and because of that, using the language of Rochelle versus singular wireless, Ms. Rochevelle was being singled out as a result of that concern. Okay, so let's assume that. How do you get to racial animus? That singling out combined with the fact that the procedure was not followed. There has been case law in this certain... But that's the same thing. Well, it is and it isn't. The only way she's singled out is the fact that the procedure wasn't followed. No, the way that she was singled out is when Gavilek, assuming for the sake of argument that you're accepting my interpretation of it correctly, Gavilek told to Roerichs, look, I'm concerned that Jamal's going to lose his job here. Figure out how to do this procedure. Where are you getting that from, though? Are you getting that from Roerichs' deposition? Yes, ma'am. That's my interpretation of what she's saying in the light most favorable to the non-moving party. That combined with the fact that Roerichs, specifically after being told I'm concerned about Jamal losing his job, then comes to the conclusion that Rochevelle is not in the same classification as Dozier, that Rochevelle is in a classification of one. In a classification of one, she's the only person in that job and determines that she's the one who is to be laid off. But didn't Gavilek already have the paperwork? And then she was calling to make sure it was the right person? No, Gavilek was the one who was told, as I recall the evidence, Gavilek found out that there were two individuals who were potentially, could be affected by this layoff, and that she made sure that the one who was not affected was Mr. Dozier as opposed to my client. Where do you see that in the record? Based on Ms. Roerichs' testimony. Based on Ms. Roerichs' testimony. And what specifically? It's Roerichs' deposition. Is this page ID 280? Is that where you're getting it? Yes, ma'am. That's exactly where I'm getting it from. I'm getting it from my questioning. I actually questioned Ms. Roerichs. When I asked Ms. Roerichs, was Gavilek concerned that Dozier was going to lose his job and be laid off, and she said yes. Now, I do see it. I still, I mean, it gets back to the same question that was asked before. You're feeding a particular name to Gavilek at that point in time, as opposed to Gavilek saying, well, on her own in a deposition, I didn't want to fire somebody. But you said, how did Jamal's name come up? And then you said, so she expressed to you that she did not want to see Jamal lose his job. You could have put anybody's name in there who was relevant. Yes, I could have, Your Honor. I could have put anybody's name in that. But I specifically used his to determine whether or not Ms. Gavilek's mindset was, I don't care who loses their job here. I just apply the procedure. But the answer to that was, yes, she says she didn't want anybody to lose their job. So I didn't put the emphasis on anybody. But I could reread it with the emphasis that I didn't want anybody to lose their job. Right. And then the next question was, but she specifically said, I don't want to see Jamal lose his job. And I believe her answer was yes to that. But didn't she express concern about your client, Rocheval, losing her job too? She did. But the question was specifically put to her, what about Jamal? Now, Roricks could have answered. Gavilek didn't. It didn't matter. She was concerned about both. She didn't want to see anybody lose their job. So, you know, it really didn't matter. But she answered, she was concerned about Jamal Doziers losing his job. And the way I, you know, because of all inferences are in the light most favorable to the non-moving party, I interpreted that to mean that she was singling out, in a manner of speaking, Miss Rocheval for layoff. And I see I've run out of time. But how do we know it's because of race and not the fact that she had a completely different job and this Dozier guy was doing the job that the remaining person would be doing? Because that's not the way, according to my witnesses, what the people actually do in these jobs is not the way it is determined as to how they are laid off. I'm not talking about, I'm not saying that that's a right, a correct interpretation of the policy. I'm saying how do you get to the racial motivation as opposed to, you know, this woman just sort of showed up because we closed a department and this is not her job anyway and this other guy's been there for a long time doing this job and it's just fortuitous that she got a classification because they were closing it down and then, you know, he should get the job. We don't care what the policy says. Well, how do I get to racial animus? It's based upon the two things that I just mentioned. The testimony of Miss Rorex about the concern over Jamal losing his job and the fact that the procedure was completely deviated from in this particular case so that Jamal could retain that position. So that would apply? It doesn't apply to everybody. It would apply under these circumstances. But it always applies if the person you prefer is a different race from the one you don't prefer? I'm sorry? It always applies when the person you prefer is of one race and the person that's fired is of another race? Utilizing race to make any employment decision. But that's the key thing. That's what Judge White's asking you. What about this shows utilizing race? The fact that, well, the fact that she singled, the fact that Rorex's testimony could be interpreted that she singled out the plaintiff for the purposes of this layoff and the fact that the procedure was deviated from in the manner that it was. So it's the combination of those two factors? Yes, absolutely. Tell me how they're different again? One, the procedure, the singling out, the way I understood it was, is Deidre Rorex was told after, before she actually calculated who was to lose their job, Miss Gabulek instructed Miss Rorex, somebody's got to lose their job, I'm concerned that it's Jamal, please figure out how to do it, and then the procedure, the process that she used to determine, was then implemented. That's how I get to that point. Thank you. Thank you. May it please this Honorable Court, my name is Tim Winship. I'm here from Flint, Michigan, representing Hurley Medical Center and Melanie Gabulek. We are requesting that this Court affirm the dismissal of the complaint on summary judgment. I know you're going to have a lot of questions. Maybe I can rely on my brief for what it says and respond to some of the things that were asked of opposing counsel, if I may. Sure. I don't think this policy is that complicated. What makes it complicated is infusing the word series into it. There was an old policy, an old practice from the 70s, where you look at jobs in series. Social worker one, social worker two, social worker three. You start with the one and start doing the layoffs and work your way up. This policy was developed in 2009. Let me just interrupt you for a second because I really think it would be a reach to say that there was no genuine issue whether they misapplied their policy. I mean, I don't think that you're going to win this case by saying that they correctly applied their policy. And that's it. But if you want to go. Just so we're clear, I do believe that that's a big part of it. I don't think they've met that threshold that there's an issue of fact on how that policy is applied. I was concerned, as Judge Sutton was initially, about the discussion of the facts by Judge Mickelson. But what I then realized is she was identifying facts that did exist and facts that didn't exist. She wasn't determining disputed facts. The fact that does not exist is that the word series does not appear in that policy. The only evidence below, presented to the court, was from Deidre Rorex, and she said, we look at the classification. That's the way the policy currently reads. Classification and department. They're both in HR. They're different classifications because they have different job titles. That is undisputed. So I do think that there is merit to our position that that is something that defeats their claim right from the get-go. So I don't think it's that complicated once you take out the word series, because that was something that doesn't apply here. Secondarily, these two affidavits are from former employees who have testified, or at least by affidavit in numerous other cases, by opposing counsel's firm. They're disgruntled employees. Be that as it may, they were gone in 2010. Melanie Gabulick became CEO somewhere around 2012. This occurred in 2014. They were testifying in their affidavits as to things that happened the way it was when they were there. So it's questionable whether that testimony would even be admissible were it to get to court or get to a jury. So the point being is the whole notion of this series and creating an issue of fact is smoke and mirror. I would just ask that you read closely to that sort of sequence, and I think then it will be a little bit easier to understand. Now we get to Judge White's position. And that's exactly our point further on. What does this have to do with race? Nothing. The uncertainty, I think, actually helps. And remember, there was only one person in each of these jobs. You're not singling some... Yes, but if you accept that they were in the same classification, you had one person at level one, one person at level two. Some circuits say that not applying your own rules in a RIF context or in a particular context is enough to show pretext. First correction, if I may, is that they're not in the same classification. They're in the same department, Human Resources. The undisputed testimony from Deidre Rorex is that they are in different classifications. So we don't have that problem, and that sort of dovetails back into the whole series. No, but then you want to put all your eggs in that basket. That's fine, but you do have these two people. I mean, you can say it's old information. You can say what you want, but there's another side to it. But I think you're right. The ultimate issue here is where is the evidence of discrimination? There's also authority... By specifying Dozier, who is an African-American, why isn't an inference that the reason why the Gavulik wants to protect Dozier is because he is African-American and that she doesn't care and wants to discriminate against Racheval here? Because he's the only other person at play. If there had been 20 people that may have been subject to the layoff instead of Racheval, and she said, well, let's keep Dozier, then I think you've got the singling out concern that opposing counsel raised. We don't have that here. You can't make a decision about who to lay off without considering the people who are to be laid off, and there's only two of them. It's just coincidental that he's African-American. It's not where there were other people, other non-minorities, who were protected. The other thing is, if you look at the job descriptions, they are very different duties from the substantive standpoint. But I don't think in this case it does generate that inference because he's the only other person that's in play, and you have to talk about Jamal. They didn't say in the depositions, what about the black guy? They said, what about Jamal? Everybody knows each other. They're going to refer to him by name. They know who holds what position. So I don't think that a reasonable jury could conclude from that evidence that there was an inference of discrimination. And let's take a look. Would this case come out differently if the roles were reversed? The person who was fired is kept, and the person who was saved is fired, which is another way to get… The person who was saved is… Well, what ends up happening is everything's the same except Jamal's fired, and Roosevelt stays in the job, and everything else about the case is the same. What I'm getting at is this funny thing we have in our circuit that you ask whether someone is the type of person that discriminates against people of a majority race, which I just find to be a little odd. But I guess what I'm really trying to say is, does this case come out differently if the person who's fired is African American and the person who stays in the job is white? There would certainly be a different color to that case, but no, I don't think it would come out any differently on the evidence that was presented below. So let's continue on, I guess, with Judge White's concerns. There is no racial animus. Back up. Plaintiff admitted she had no information to suggest that Melanie Gavulik discriminates based on race. She admitted that there is no evidence that anybody in the HR department discriminates based on race. Rebecca Jackson, I believe in her deposition, said she was unaware of any racial animus in any of the decisions that were made. The uncertainty... But there was evidence of past practices, right? Of not wanting to fire someone who's African American. That, I think, when you look at the district courts... Is that evidence too old? Is it the wrong area? No specifics. It is a vague generalization from something that purportedly happened in the past. We're not agreeing that it did. They thought that they brought out that it was initiated by the union. Yeah, and it may have had some union component. Different decision maker, is that the way to think about it? That's another way to think about it. Certainly, it wasn't any CEO making those decisions. Whatever those decisions were. But they were nebulous, non-specific situations that had occurred in the past. And the authority that we have in the circuit, and from other circuits, is in cases where you have an atmosphere of discrimination, there's a lot more that goes on. In the gender context, you've got the degradation of women, and in the comments, women will never hold a position. Those are the kinds of atmospheres that we're talking about, and they included the same decision makers. In this case, Melanie Gavulik was not involved. There's been zero evidence that she was involved in any of these supposed job assignments or retentions or layoffs in the past involving African Americans. The ultimate point that we hope to make is that this is a situation where, at most, there was confusion or uncertainty on what to do. I think because Ms. Gavulik asked for assistance, shows that there was some uncertainty. But that uncertainty alone, and the cases in our circuit, I think, Judge Moore, you were actually on one of the panels. It was a failure to promote a case, the White v. Columbus Housing Authority, where it stated deviation from RIF in and of itself is not evidence of discriminatory animus. It's got to be intentional discrimination. There are other unpublished decisions in our circuit that come down kind of the same way. And like Judge Moore, you indicated, there are other circuits which have talked about errors and reductions in force, but there's also a thread in the 5th, 7th, 10th, and 11th circuits where they do acknowledge that merely making a mistake in applying your RIF in and of itself is not evidence of discriminatory animus. That alone is not evidence of discriminatory animus. At most, that's what we have here, is that there was a mistake in following this policy, however you want to interpret it. Well, your opponent says there are two things. There's the mistake and there's this commentary about Dozier in the deposition of Rorik's. Yeah, and I think you nailed it on the head when you pointed out that Judge Mickelson looked at that and said, well, wait a minute. The question was, and we've all got it in front of us, essentially, what about Jamal? Deidre's response was, Ms. Rorik's response was, she didn't want anybody to lose her job. Followed up by the specific question, well, did she want Jamal to lose his job? No. She didn't want Ms. Rocheval to lose her job either. And I apologize, we do a lot of work for Hurley Medical Center, so we refer to them all by first name since I've worked with them occasionally. So I don't think that this is a case where there's been any evidence presented below which would allow a reasonable jury to conclude that there was intentional discrimination, discriminatory animus, by Ms. Gavulik. The 1983 claim is against her only, that she had any discriminatory animus in making the decision about who was to be laid off. Consequently, we would ask that the lower court's decision on summary judgment be affirmed and unless there are any other questions, I think that's all I have to say. Thank you. Thank you. Getting to the ultimate issue of whether race was a factor, there's one other thing I wanted to point out which was briefly touched on in the appellee's argument, and that was the discriminatory atmosphere or the past practices of discrimination that was identified by Ms. Jackson in her affidavit. And when you look at Rochelle's, which is the 2013 Sixth Circuit opinion, and it's not the only case that talks about it, but it does talk about it, it talks about even the conduct of non-decision makers may be probative of whether an adverse action directed at a plaintiff was racially motivated. And they go on to say, moreover, management's consideration of an impermissible factor in one context may support the inference that the impermissible factor entered the decision-making process in another context. So you're saying there was a discriminatory atmosphere. Based upon Ms. Jackson's statement in her affidavit, which was attached to our response for the summary judgment. And it was a discriminatory atmosphere against Caucasians? Yes, that's what she states in her affidavit. I believe it's the last paragraph of her affidavit, or second to last paragraph of her affidavit. Doesn't she link it to, doesn't she explain what happened was that somebody, management would designate someone for layoff and then the union would come back and say, no, reclassify that person, we don't want that person laid off. Actually, I have directly what she says in my brief. And she doesn't mention anything about unions. She talks about Hurley Medical Center made great strides to retain African-American employees during reorganizations and layoffs. Caucasian employees were not given the same consideration as African-American employees with respect to reorganizations and layoffs within the hospital. Right, that's her affidavit. And then a number, she was actually deposed, right? Correct, correct, yes, correct, correct. I believe that's the context that she put it in. She clarified the context she put it in. That's a different decision-maker. However, Rochelle says that the actions of non-decision-makers are probative. And in terms of whether that's what Rochelle stands for, the proposition, it also stands for the proposition that how management dealt in one context could be carried over to another context in certain situations. And I understand that Rochelle's is against a corporation, this is against an individual. I do understand the distinction, but the holding still does, it still holds what it holds. Do you have any other questions? Thank you very much. Thank you. Thank you both for your argument. The case will be submitted. And would the clerk adjourn court?